IRENE SCHWARTZ ET AL. *v.* TOWN OF HAMDEN ET AL.

MELINDA DANIELS ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF HAMDEN

MELINDA DANIELS ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF HAMDEN

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued October 15, 1974—decision released February 25, 1975

*James H. Shulman* and *Douglas R. Daniels,* with whom was *David Kotkin,* for the appellants (plaintiffs) in each case.

*John H. Anderson,* assistant town attorney, for the appellees (defendants) in each case.

BOGDANSKI, J. These three appeals were taken from the decision of the defendant planning and zoning commission approving and adopting street lines for a new highway system referred to as the east-west connector in the town of Hamden. The Court of Common Pleas dismissed all three appeals. From the judgments rendered thereon and after the granting of certification, the plaintiffs filed a joint appeal to this court, assigning error in the conclusions reached by the trial court.

## I

On March 24, 1970, the planning section of the defendant commission, pursuant to § 8-29 of the General Statutes, held a public hearing to consider recommendations for the establishment of street lines for the east-west connector. Those street lines were subsequently approved and adopted. The plaintiffs in the first appeal, Schwartz et al., are a group of individuals who collectively own a shopping center known as Hamden Plaza located approximately three-fourths of a mile from the proposed east-west connector. They alleged that they were "affected" by the establishment of the proposed layout, grade and street lines and therefore had standing to appeal the decision under § 8-30 of the General Statutes. The trial court found that none of the Hamden Plaza plaintiffs owned or had an interest in land within the taking lines of the east-west connector, and concluded that they were not "affected" or "interested" parties under § 8-30. Their appeal was therefore dismissed for lack of jurisdiction.

Appeals to the courts from the actions of planning and zoning commissions exist only under statutory authority and unless a statute provides for such appeals courts are without jurisdiction to entertain

them.  See, e.g., *Tazza* v. *Planning & Zoning Commission,* 164 Conn. 187, 190, 319 A.2d 393; *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 560, 290 A.2d 348; *Sheridan* v. *Planning Board,* 159 Conn. 1, 10, 266 A.2d 396; *Long* v. *Zoning Commission,* 133 Conn. 248, 252, 50 A.2d 172.  In these cases, § 8-30 limits the right of appeal to those persons "affected" by the commission's action taken under § 8-29 and any "interested" party may join in that appeal.

In 1949, a person appealing from any action of a planning commission was required to show that he was "aggrieved" by such action.  General Statutes § 861 (Rev. 1949).  That section was repealed with the enactment of Public Acts 1951, No. 321, later §§ 389d, 390d, and 391d of the 1955 Cumulative Supplement.  Those sections were the predecessors of §§ 8-28, 8-29 and 8-30 respectively and established the present standing requirements for appeals to the courts from the actions of planning commissions. The "aggrievement" requirement was retained in § 389d (General Statutes § 8-28) for all such appeals except those taken from the action of a planning commission approving and adopting surveys, maps or plans of town highways under § 390d (General Statutes § 8-29).  In the latter case, § 391d (General Statutes § 8-30) gave standing to appeal to any person "affected" by such action.

The Hamden Plaza plaintiffs argue that the legislature intended a lesser demonstration of detrimental influence when it substituted the word "affected" for the word "aggrieved."  That argument fails when §§ 8-29 and 8-30 are read together.  See *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174.  Section 8-29 authorizes planning commissions to prepare and file sur-

veys, maps and plans of proposed town highways. The commission is then required to "give notice to *each record owner and to each mortgagee of record of land included in such survey, map or plan,* by mail and by advertisement in a newspaper of general circulation in such municipality, of such filing and of the place . . . where, and the time . . . when, such commission shall hear any person claiming to be *affected* thereby. Such commission, after such hearing, may approve and adopt such map or plan, and may make assessments of benefits accruing to and damages sustained by any person owning land included in such survey, map or plan, and shall give notice of such benefits and damages to mortgagees of record of such land. . . . Such commission may change any survey, map or plan so made and filed by it . . . . Notice by mail of such change shall be given by such commission to *each record owner and to all persons having a recorded mortgage interest in land affected thereby* . . . [emphasis added]." General Statutes § 8-29. A close reading of § 8-29 leaves little doubt that the legislature intended the word "affected" to describe a narrow class of persons. That word is used twice, each time to denote record owners and mortgagees of record of land included in the survey, map or plan of a proposed town highway. Section 8-30, in establishing the right to appeal, does not expand that narrow class of persons described in § 8-29 as "affected": *"Any person affected may appeal from the action of such commission taken under section 8-29* within thirty days *after notice to him* of the adoption of a survey, map or plan or the assessment of benefits or damages and any interested party may join in such appeal [emphasis added]. . . ." General Statutes § 8-30. "Affected" persons are limited to those who are to

be given notice of the commission's action taken under § 8-29, i.e., record owners of land and mortgagees of record of land included in the survey, map or plan of the proposed highway.

The intent of the legislature is to be ascertained from the language used in the statute if that language is plain and unambiguous. *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36. The language in §§ 8-29 and 8-30 is susceptible to only one interpretation of the word "affected." Since the Hamden Plaza plaintiffs were not owners of land or mortgagees of record of land within the survey, map or plan of the east-west connector, the trial court correctly concluded that they were not "affected" persons. See, generally, *Manners* v. *Waterbury,* 86 Conn. 573, 86 A. 14; *Clark* v. *Saybrook,* 21 Conn. 313.

The Hamden Plaza plaintiffs also claim that the trial court erred in concluding that they were not "interested parties" as that phrase is used in § 8-30. We need not reach that claim. Only "affected" persons may appeal under § 8-30, while "interested parties" may join in such an appeal. The Hamden Plaza plaintiffs did not join in the appeal of an "affected" person, but chose instead to take an independent appeal. Their appeal was properly dismissed for lack of jurisdiction.

## II

The plaintiffs in the second and third appeals, Melinda Daniels et al., are owners of land within the survey of the east-west connector. They therefore had standing to appeal as "affected" persons under § 8-30. Two of those plaintiffs, Clyde and

Ethel Campbell, were not given notice by mail of the commission's March 24, 1970 hearing as required by § 8-29. The provision requiring notice by public advertisement, however, was complied with and the Campbells did appear at the hearing through counsel. The plaintiffs contend that the commission's approval and adoption of the east-west connector was illegal in that it failed to give the Campbells the required notice by mail. The trial court concluded that the appearance of counsel for the Campbells at the hearing constituted a waiver by them of that notice requirement. The plaintiffs have assigned error in that conclusion.

The plaintiffs argue that failure to give the required notice constitutes a jurisdictional defect, results in a lack of due process, and renders a subsequent action of the commission or board null and void. *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 44, 301 A.2d 244, and cases cited therein. "The fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought." *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693, 137 A.2d 542; *Winslow* v. *Zoning Board,* 143 Conn. 381, 389, 122 A.2d 789.

It must be emphasized, however, that the line of cases cited above deal with the problem of constructively notifying, by means of legal advertisements, as much of the population as possible of contemplated zoning actions. See General Statutes §§ 8-3, 8-3c and 8-7; *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 47; *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325, 207 A.2d 58. In those cases, subsequent action by the zoning commission or board has been held invalid if the constructive notice

given to the public was inadequate. See, e.g., *Aurora* v. *Zoning Board of Appeals,* 153 Conn. 623, 625, 220 A.2d 277; *Lunt* v. *Zoning Board of Appeals,* 150 Conn. 532, 536, 191 A.2d 553. This was true even when the complaining party appeared at the public hearing since the legislative intent to notify the public constructively would otherwise be frustrated. *Slagle* v. *Zoning Board of Appeals,* supra.

With regard to the notice by mail provision at issue here, the legislative intent was to give actual notice to owners and mortgagees of record of land within the survey, map or plan of the proposed town highway. That intent was not frustrated in this case since the Campbells did appear through counsel at the hearing without objection to the lack of personal notice. There is no claim made that the Campbells did not have adequate time in order to prepare intelligently for the hearing. Lack of personal notice may be waived by the party entitled to it. *Palo* v. *Rogers,* 116 Conn. 601, 605, 165 A. 803; *Manners* v. *Waterbury,* 86 Conn. 573, 578, 86 A. 14. The failure of the commission to notify the Campbells by mail did not render its subsequent action void, and the trial court correctly concluded that the Campbells waived their right to object to that omission when they appeared without objection at the hearing.

### III

The plaintiffs claim that "certain" members of the commission predetermined the issues before them at the March 24, 1970 hearing. They argue that the mayor of Hamden, pursuant to the town charter, appointed the members of the commission; that the mayor was an outspoken advocate of the proposed east-west connector; and that he appeared

before the commission and testified in favor of that proposal. The plaintiffs would have this court conclude that the mayor's advocacy in favor of the east-west connector, combined with his power to appoint the members of the commission, created an improper influence on the commission and, in effect, caused a predetermination of the issues by its members.

The trial court concluded that it was a proper function for the mayor to take a position on the issues. That conclusion is correct. "In this day of keen competition to attract industry and business to a state or to a particular locality, public officials are expected to cooperate in helping an industry to locate in their community." *Peterson* v. *Norwalk,* 150 Conn. 366, 376, 190 A.2d 33; *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 306, 278 A.2d 799. The mayor as the chief executive officer of the town was in duty bound to express to the public and to local administrative boards what he believed to be in the best interests of the community. See, generally, *Lurie* v. *Planning & Zoning Commission,* supra, 310.

Beyond the bald assertion that the mayor's power to appoint members to the commission created an improper influence, the plaintiffs have pointed to nothing in the record or in the appendix to their brief to support their allegation that certain members of the commission predetermined the issues before them at the March 24, 1970 hearing. The plaintiffs did include portions of certain letters to town officials from a private party interested in the proposed east-west connector. Those letters, made exhibits at a limited hearing before the trial court, disclose only that the private party was in favor

of speedy adoption of the new highway plan. Nothing in the letters is relevant to the issues of predetermination or improper influence. Moreover, such letters, written by an outside party, would be incompetent to establish the state of mind of a member or members of the commission. The burden of proving predetermination was on the plaintiffs. *Furtney* v. *Zoning Commission*, 159 Conn. 585, 595, 271 A.2d 319. They have failed to meet that burden.

## IV

The plaintiffs next claim that James Doherty, a member of the commission, violated the provisions of § 8-21 of the General Statutes which prohibit a member of a local planning commission from appearing for or representing any person in any matter pending before any planning or zoning commission in the same municipality. The record discloses that Doherty was the law partner of the Hamden town attorney. Doherty had disqualified himself from all hearings, sessions and discussions of the commission regarding the east-west connector because he and his law partner had represented the Hamden Plaza plaintiffs for many years. The plaintiffs contend, however, that Doherty should have resigned from the commission because of his partnership with the town attorney, who, by town charter, is the legal advisor of the mayor. The plaintiffs' theory, based on *Bossert* v. *Norwalk*, 157 Conn. 279, 253 A.2d 39, is that Doherty's law partner, the town attorney, represented the mayor in his appearance before the commission and that because of the partnership, Doherty himself was representing the mayor within the prohibition of § 8-21. The short answer to that claim is that there is nothing in the record or in the appendices

to show that Doherty or his law partner ever appeared before the commission or in any way took part in the proceedings.

The plaintiffs also assert that Doherty's partnership with the town attorney and its relationship with the mayor weakened public confidence and undermined the public's sense of security in the fairness of its planning and zoning officials. We have long held that a public official "must not be permitted to place himself in a position in which personal interest may conflict with his public duty." *Low* v. *Madison,* 135 Conn. 1, 8, 60 A.2d 774. The policy of the law is to keep the official so far from temptation as to insure his unselfish devotion to the public interest. Anything which tends to weaken public confidence is against public policy. *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498–99, 234 A.2d 838; *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 499–500, 191 A.2d 250; *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 498–99, 134 A.2d 250. "The test is not whether personal interest does conflict, but whether it reasonably might conflict." *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 214, 224, 348 A.2d 560 (majority and dissenting opinions); *Josephson* v. *Planning Board,* 151 Conn. 489, 495, 199 A.2d 690. By disqualifying himself, Doherty fulfilled the command of the law. The trial court was correct when it stated that it could not "justifiably infer that a nonparticipating member of the commission had some nebulous and remote interest in affecting the decisions of the commission."

The plaintiffs further claim that the seating of an alternate after Doherty disqualified himself was

not done in accordance with § 8-1b of the General Statutes and § 13-2 of the charter of the town of Hamden. The record, however, fails to disclose what, if any, violation of those provisions occurred. The plaintiffs did allege that the commission alternate was not chosen in rotation and that no reasons for this were recorded in the commission's minutes. Those allegations were denied by the commission. While the plaintiffs have assigned error in the conclusions of the trial court relating to the seating of the alternate, there are no findings on that issue. Without the subordinate facts on which the court based its conclusions, we are unable to review the claim. See *Martin* v. *Personnel Commissioner,* 167 Conn. 377, 379, 355 A.2d 256; *Lomas & Nettleton Co.* v. *Cadoux,* 163 Conn. 603, 605, 316 A.2d 413; *McNamara* v. *New Britain,* 153 Conn. 705, 214 A.2d 676.

## V

The plaintiffs' final claim of error relates to the trial court's conclusion that the commission "acted fairly and with proper motive and valid reasons for the general welfare, health and safety of the community as a whole." The plaintiffs contend that the layout of the east-west connector was for the benefit of a special group who wished to develop a shopping center and did not serve the best interests of the community as a whole.

Those allegations find no support whatsoever in the record. The trial court found that the east-west connector had first been proposed ten years prior to the establishment of the street lines; that the project had been in the process of development and discussion during that ten-year period; and

that the plans for the highway had been prepared and approved as a part of a master street plan designed to meet the future needs of the town of Hamden. The appendices further disclose that the town engineer, the public works director and the fire department chief all appeared and testified in favor of the adoption of the east-west connector. The record as supplemented by the appendices amply supports the conclusion of the trial court that the commission acted fairly and with proper motives when it approved and adopted the plans for the east-west connector.

Other assignments of error not briefed by the plaintiffs are considered abandoned. *Waldron* v. *Raccio,* 166 Conn. 608, 609, 353 A.2d 770.

There is no error.

In this opinion the other judges concurred.