[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal is taken pursuant to General Statutes § 8-8 by the plaintiffs, Francis J. Buck ("Buck"), Janet Sitty ("Sitty"), and Helen Fedus ("Fedus"), from a decision of defendant Stonington Planning and Zoning Commission (the "Commission"), granting a special permit and site plan approval to defendant Mystic Oil Company, Incorporated ("Mystic") for the construction of a gasoline service station and convenience store in the town of Stonington. The court finds the issues in favor of the defendants.
 I.
The factual and procedural background for this appeal follows.
On or about December 14, 1992, defendant Mystic submitted a Zoning and Building Application for special permit and site plan approval (the "Application") to defendant Commission for the construction of a gasoline service station and a convenience store at Mystic's property located at the corner of Jerry Brown Road and Greenmanville Avenue in the Town of Stonington, Connecticut. A public hearing on the Application was scheduled for January 26, 1993. The hearing was noticed by publication in The Day on January 15, 1993 and January 22, 1993. CT Page 7348
The plaintiffs allege, however, that the public hearing on the Application was not held on January 26, 1993, but instead was held on February 4, 1993; the Commission did not complete its schedule agenda by its regularly appointed adjournment hour. The February 4, 1993 hearing was noticed by publication in The Sun and The Day on February 1, 1993. The public hearing was opened on February 4, 1993, and continued until March 16, 1993. Said continuation was noticed by publication in The Sun and The Day on March 5, 1993 and March 12, 1993. On April 20, 1993 the Commission voted unanimously to approve the Application. (Record of Decision of Town of Stonington Planning and Zoning Commission, published April 30, 1993, dated May 7, 1993). Notice of the Commission's decision was published in The Day on April 30, 1993.
On May 21, 1993, the plaintiffs filed this appeal from the Commission's decision to approve defendant Mystic's Application.
A. Jurisdiction
General Statutes § 8-8 governs appeals from zoning commissions to the superior court, and, in order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377
(1988). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of the appeal. Id.
B. Aggrievement
Aggrievement is a jurisdictional matter and a prerequisite to maintaining an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 307
(1991) General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." In an appeal from a decision of a planning and zoning commission, an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
General Statutes § 47-73 provides that "[e]ach CT Page 7349 [condominium] unit, together with its undivided interest in the common elements, shall for all purposes constitute real property." Sitty and Fedus are condominium unit owners in the Whitehall Pond Condominium. (Plaintiffs' Exhibit B: Sitty's Unit Warranty Deed for Unit A-14; Plaintiffs' Exhibit C: Fedus' Unit Warranty Deed for Unit D-7). Although their individual condominium units are located more than one hundred feet from the land involved in the decision of the Commission, the land comprising a common element of the condominium, however, is located within one hundred feet of the subject property. Both the record and testimony establish that Sitty and Fedus each own an undivided percentage share of the common elements in Whitehall Pond Condominium, and thus an individual interest in the land. I therefore conclude that both Sitty and Fedus are aggrieved persons for the purposes of this appeal. See General Statutes § 8-8 (a)(1).
Buck, however, resides at 124 Whitehall Avenue, approximately three hundred feet from the proposed development, and presented no evidence showing that she owns property which abuts or is within the radius of one hundred feet of the land involved in the Commission's decision. Thus, to establish aggrievement, Buck "must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community as a whole."Winchester Woods Associates v. Planning Zoning Commission, supra, 307. Additionally, Buck must "successfully establish that this specific personal and legal interest has been specifically and injuriously affected by the decision." Id. Buck has presented no evidence of such classical aggrievement. Therefore, because a finding of aggrievement is a prerequisite to maintaining an appeal, and there is no such evidence, Buck's appeal is accordingly dismissed.
C. Timeliness
General Statutes § 8-8 (b) provides that an appeal must be commenced within fifteen days from the date that the notice of decision is published. The Commission published its decision on April 30, 1993.
The sheriff's return indicates that the Stonington town clerk and the chairperson of the Commission were served on May 13, 1993, within fifteen days of publication of the CT Page 7350 decision. The plaintiffs' appeal is timely.
 II
A trial court may grant relief on appeal from a decision of an administrative agency only where the authority has acted illegally, arbitrarily or has abused its discretion.Raybestos-Manhattan, Inc. v. Planning Zoning Commission,186 Conn. 466, 470 (1982). "The burden of proof is on the plaintiff to demonstrate that the board has acted improperly." (Citations omitted.) Spero v. Zoning Board of Appeals,217 Conn. 435, 440 (1991). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission,211 Conn. 85, 96 (1989).
 III
In their memorandum of law, the plaintiffs[1] argue that their appeal should be sustained for the following reasons: (1) the Commission lacked jurisdiction to consider the application because published notice of the public hearing was defective; (2) no notice of the public hearing was sent to the abutting property owners; and (3) the site plan application failed to conform to the requirements of the Stonington zoning regulations ("regulations").
In its memorandum of law, joined by the Commission, Mystic argues the following: (1) published notice of the public hearing was not defective; (2) unit owners are not adjoining landowners and thus are not due notice of public hearing under applicable zoning regulations; and (3) the Commission's decision is reasonably supported by the record and is not arbitrary, illegal and in abuse of the Commission's discretion.
The court will take up each of these issues in turn.
A. Publication of Notice
The plaintiffs argue that the Commission failed to give adequate notice of the February 4, 1993 hearing, thereby depriving the Commission of subject matter jurisdiction over the matter. CT Page 7351
General Statutes § 8-3c(b) sets out the notice requirements for public hearings on special permit applications. Section 8-3c(b) provides, in pertinent part, as follows:
 Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing.
The regulations do not address the issue of the adequacy of notice required for public hearings. Mystic's Application was scheduled on the Commission's agenda for public hearing on January 26, 1993. Notice of the January 26, 1993, hearing was published in The Day on January 15, 1993, and again on January 22, 1993. No claim is made that The Day is not a newspaper having a substantial circulation in the Town of Stonington.
Neither the statutes nor the regulations require that new notice must be given if a hearing is continued, and the plaintiffs provide no authority for this assertion. The record shows that the hearing on Mystic's Application was continued to February 4, 1993. The Commission published notice of the continued hearing in The Day on February 1, 1993, which it was not obligated to do. The court concludes that the notice given complies with the requirements of General Statutes § 8-3c(b).
B. Notice to Plaintiffs Sitty and Fedus
A town's zoning regulations may provide for notice requirements in addition to those required by statute. General Statutes § 8-2. Section 6.1.1.3.2 of the regulations provides, in pertinent part: "The applicant shall notify all adjoining landowners of record of the filing of such special permit application and of the date, time and place of the meeting of the Commission at which the application is to be considered."
 [F]ailure to give personal notice to a specific individual is not a jurisdictional CT Page 7352 defect. In Schwartz v. Hamden, [168 Conn. 8
(1975)], we discussed the different purposes of published newspaper notice and personal notice. The purpose of a personal notice statute is to "give actual notice to [the person entitled to notice]." Therefore, if a person has actual knowledge of a hearing, the failure to give mailed notice does not frustrate the purpose of the notice provision.
(Citations omitted; internal quotation marks omitted.) Lauer v.Zoning Commission, 220 Conn. 455, 462 (1991). Moreover, "[l]ack of personal notice may be waived by the party entitled to it." Schwartz v. Hamden, supra, 15 (plaintiffs appearing without objection at hearing waive their right to claim lack of personal notice).
Sitty attended the public hearing and spoke. By attending the public hearing, she had actual notice and waived her right to written personal notice. Id. Fedus signed a petition dated January 19, 1993, opposing the Application of the defendant Mystic. (See record, Item I/B: Petition of residents opposing Application of Mystic Oil Company dated January 19, 1993). That petition specifically references the public hearing. Thus, Fedus also had actual notice of the pending Application, and therefore waived her right to written personal notice. The failure to give written notice of the hearing to Fedus and Sitty did not therefore deprive the Commission of jurisdiction to hear the matter. Lauer v. ZoningCommission, supra.
 IV
The plaintiffs argue that the Application did not comply with applicable zoning regulations in a number of respects. Each of these claims merits brief discussion.
A. Signage
The plaintiffs claim that the signage proposed in the site plan by Mystic exceeds the area and height requirements of sections 7.12.7.3 and 7.12.4.3 of the regulations. The detached sign provided on the site plan is 144 square feet in area and twenty-five feet in height. The regulations cited by CT Page 7353 the plaintiffs allow for a detached sign not to exceed eighteen square feet in area nor twenty feet in height. Section 7.12.7.4 provides, however, that "one detached sign, not to exceed two hundred (200) square feet in area or thirty (30) feet in height" is allowed as a special use in TC-80 or GC-60 commercial districts. The subject property is located in a GC-60 zone and the detached sign shown on the site plan is below the maximum area and height requirements permitted by section 7.12.7.4 of the regulations. I conclude, therefore, that the Commission had a sufficient basis in the record to find that the proposed signage complies with the applicable regulations.
B. Storm Drainage
The plaintiffs argue that the storm drainage calculations were neither submitted with the Application nor provided at the public hearing. Section 7.13.2 of the regulations, however, does not require that drainage calculations be included as a part of the site plan application or submitted at the public hearing. Rather, § 7.13.2 simply sets forth the criteria upon which an applicant is to base the storm drainage design.
Page two of the site plan shows various components of the proposed storm drainage system to be installed on the property. Page five of the site plan shows the design and construction details of the storm drainage system. Additionally, Conrad Decker, a consulting engineer, testified that the proposed drainage system was based upon calculations in excess of a twenty-five year storm. The record contains the criteria upon which the applicant based the storm drainage design, and the Commission could so reasonably find.
C. Erosion and Sediment Control
The plaintiffs next claim that the site plan failed to satisfy the requirements of § 7.6.2 of the regulations by failing to provide a detailed narrative of the sedimentation and erosion control plan. Specifically, the plaintiffs cite to the absence of erosion control notes in the site plan.
Section 7.6.2 of the regulations sets out the general requirement that "[a] site plan and a narrative description of the development shall be submitted." Subsections 7.6.2.1 CT Page 7354 through 7.6.2.6 set forth categories of information regarding erosion and sedimentation control. There is no specific requirement that each category of information be provided in narrative form or notes.
Page four of the site plan contains the details of the proposed erosion and sediment control plan. There is one note listed under the heading "General Notes" in this portion of the site plan. There are, however, numerous other notations in narrative form on this page of the site plan which provide details with respect to the design and construction of the various elements of the erosion and sedimentation control plan. Even if the regulations are read to require each category of information to be in narrative form, the record does contain evidence that narration was provided which the Commission could reasonably determine was sufficient to meet the requirement set forth in the regulations. The plaintiffs' argument on this issue is unpersuasive.
D. Determination of Appropriateness
The plaintiffs argue that there is no evidence in the record to show that the Commission made a determination of appropriateness of the design of the proposed site as required by § 7.13.3 of the regulations. Section 7.13.3 requires the Commission to make a determination of appropriateness "based on a review of the physical environment within 500 feet of the site, or, if none, by all buildings in a similar zone." Section 7.13.3 also requires a site plan to contain "scaled elevation drawings of the proposed structures for a design review . . . . The drawings shall locate and identify exterior materials, fixtures, roof pitch and building height."
Page six of the site plan contains scaled elevation drawings of the proposed improvements to be made at the property. At the March 16, 1993 hearing, photographs of businesses in the vicinity of the property were presented by Mystic to the Commission. The record contains evidence which the Commission considered in accordance with § 7.13.3 of the regulations, and this claim of the plaintiffs fails. The court cannot substitute its judgment for that of the Commission.
E. Seal of Professional Engineer
The plaintiffs argue that the site plan fails to CT Page 7355 conform with § 8.4.2.2 of the regulations because it was not sealed by a professional engineer or land surveyor.
Page six of the site plan contains the seal of Frank J. Paskowski, Jr., Registered Professional Engineer in the State of Connecticut. This claim has absolutely no merit.
F. Drainage Design
The plaintiffs next claim that the site plan omits the drainage design required by § 8.4.2.5 of the regulations. The site plan, however, contains detailed information regarding the design of the components to the drainage system to be constructed on the site. The site plan also identifies the location and placement of the drainage system on site. The Commission could have reasonably determined that the site plan conforms with § 8.4.2.5 of the regulations with respect to the drainage design.
G. Class A-2 Survey Requirements
The plaintiffs next claim that no Class A-2 Survey was provided as required by § 8.4.2.3 of the regulations. Section 8.4.2.3 of the regulations, however, does not require that a Class A-2 Survey be submitted with a site plan. Rather, § 8.4.2.3 requires "[s]urvey information including distances with angles or bearings based on a Class A-2 Survey."
On page one of the site plan, note eight states as follows: "Survey data taken from survey prepared by Connecticut Land Surveyor No. 14208: Titled: Plan Showing Property of Mystic Oil Co., Connecticut Rte. 27. Greenmanville Avenue and Jerry Brown Road. Stonington, CT; dated January 1992." Additionally, there was testimony at the February 4, 1993 hearing that said survey upon which the site plan has been based was a Class A-2 Survey. The Commission could reasonably find from the record that the site plan conformed to § 8.4.2.3 of the regulations.
H. Floor/Area Ratio
The plaintiffs also claim that the proposed site plan defects discussed above had the cumulative effect of depriving the Commission of the ability to conduct an accurate review of the site plan. Specifically, they allege that the confusion as to the amount of inland wetlands located on the property CT Page 7356 precluded the Commission from finding that the floor area requirements as set out in Table 5.2.1 had been met.
Table 5.2.1 provides that structures in a GC-60 zone must have a floor area ratio no greater than .25; that is, the ratio of the total floor area of all buildings on a lot in a GC-60 zone to the total area of such lot may not exceed .25. The record reflects that there was a discussion of floor area ratios. Despite the obvious error in the statement of wetlands area on the lot, both the record and testimony offered at the hearing show that the Commission considered and properly determined that the planned construction would comply with the floor area ratio requirements. The plaintiffs have not shown otherwise.
I. Refuse Storage Area Screening
The plaintiffs finally argue that an additional defect in the site plan exists as screening was not provided for the refuse storage area which is required by § 7.13.1.4 of the regulations. Section 7.13.1.4 provides, in pertinent part, that "[a]ll refuse areas shall be screened with fencing and evergreen trees or shrubs at least 6 feet high."
Page six of the site plan shows wooden fencing around the refuse storage container. The site plan does not show any evergreen trees or shrubs. Conrad Decker, the engineer, however, testified that along the entire rear of the property there is "a substantial deciduous tree buffer that goes across the back and separates this property, the improvements on the property from the wetlands area in the rear." The site plan indicates that the buffer would substantially shield the storage area, and the Commission could have reasonably so found. In any event, the court agrees with the defendants that even if this was a defect, it is trivial.
For the foregoing reasons, it is evident that the record reasonably supports the conclusions reached by the Commission, and I conclude that the plaintiffs did not show that the Commission acted arbitrarily, illegally or in abuse of its discretion in granting defendant Mystic a special permit and site plan approval for the construction of a gasoline service station and convenience store in the Town of Stonington. Therefore, the plaintiffs' appeal is dismissed. CT Page 7357
Teller, J.